1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NICHOLE L.,

                    Plaintiff,

            v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

Case No. C22-1778-MLP

ORDER

## I.    INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income. Plaintiff contends the administrative law judge ("ALJ") erred in assessing Plaintiff's residual functional capacity ("RFC"). (Dkt. # 29 at 2.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.    BACKGROUND

Plaintiff was born in 1976, has an 8th-grade education, and has worked as a hotel housekeeper and in-home caregiver. AR at 64-65, 299. Plaintiff was last gainfully employed in 2017. *Id.* at 298-99. In July 2018, Plaintiff applied for benefits, alleging disability as of January 1, 2013. AR at 270-76. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 129-32, 136-41. After the ALJ conducted hearings in April

1    and September 2021 (*id*. at 37-72), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at

2    17-31.

3          As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the

4    Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the

5    Commissioner to this Court. (Dkt. # 5.)

6                          **III.    LEGAL STANDARDS**

7          Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

8    security benefits when the ALJ's findings are based on legal error or not supported by substantial

9    evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a

10   general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the

11   ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

12   (cited sources omitted). The Court looks to "the record as a whole to determine whether the error

13   alters the outcome of the case." *Id*.

14         "Substantial evidence" is more than a scintilla, less than a preponderance, and is such

15   relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

16   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th

17   Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical

18   testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d

19   1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may

20   neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v.*

21   *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one

22   rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## IV.    DISCUSSION

### A.    The ALJ Did Not Err in Evaluating Plaintiff's Testimony

Plaintiff contends the ALJ erred in evaluating her subjective symptom testimony. (Dkt.

# 29 at 22-27.) The ALJ found that while Plaintiff's medically determinable impairments could

reasonably produce the symptoms Plaintiff testified to, the intensity, persistence, and limiting

effects as alleged by Plaintiff were inconsistent with the objective medical evidence and other

evidence in the record. AR at 24-27.

Absent evidence of malingering, an ALJ is required to provide clear and convincing

reasons to discount a claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir.

2014). These reasons must be supported by substantial evidence in the record as a whole. 42

U.S.C. § 405(g); *see also Bayliss*, 427 F.3d at 1214 n.1. Plaintiff, in both her opening and reply

brief, argues that the ALJ erred by overly relying on objective medical evidence to discount her

testimony. (Dkt. # 29 at 23; dkt. # 33 at 3.) But an ALJ may reject a Plaintiff's symptom

testimony when it is contradicted by the medical evidence. *See Carmickle v. Comm'r of Soc. Sec.

Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Moreover, an ALJ is neither required to "believe

every allegation of disabling pain," *Ahearn v. Saul*, 988 F.3d 1111, 1116 (9th Cir. 2021) (citing

*Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)), nor to "perform a line-by-line exegesis" of

Plaintiff's testimony. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). "The standard isn't

whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it

has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). Plaintiff

testified that she required the help of her children with household chores, including cooking,

laundry, and grocery shopping. AR at 52-57. Specifically, she could only walk four grocery store

aisles before she needed to take a break by leaning on the cart, needed both hands to lift a gallon

of milk, and could not lift a gallon of milk off the floor or over her head. *Id*. She testified that she

1   required a break after standing for ten minutes at home, could not sit for thirty minutes, could not

2   feel comfortable unless she was lying down, and experienced burning in her feet, back, and neck.

3   *Id*. She also testified that she required naps during the day and felt tired and drained because of

4   her medication and difficulty sleeping. *Id*.

5          Here, the ALJ first discounted Plaintiff's testimony about her physical symptoms because

6   the "minimal and mild physical examination findings" and lack of any "muscle wasting and/or

7   atrophy" were inconsistent with the severity of physical limitations Plaintiff alleged. AR at 25.

8   The ALJ highlighted that: (1) an October 2017 nerve conduction study returned normal findings

9   and noted that the Plaintiff demonstrated 5/5 strength in her upper extremities (*id*. at 448-50); (2)

10  an April 2018 neurological examination recorded normal strength, gait, neck range of motion,

11  and only mild tenderness to palpation in the neck (*id*. at 383); (3) examinations in 2019 indicated

12  normal range of motion in the back (*id*. at 534, 537, 544); and (4) recent emergency room

13  records documented normal motor, sensory, and strength with no weakness and without muscle

14  atrophy.[1] *Id*. at 839.

15         In evaluating medical opinions, it is not enough for an ALJ to merely offer her

16  conclusions, rather, the ALJ "must set forth [her] own interpretations and explain why they,

17  rather than the doctors', are correct." *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

18  Here, the ALJ explained that the normal results were significant because, given the severity of

19  limitations Plaintiff alleged, the record would normally reflect more abnormal findings.

20  Furthermore, as the Ninth Circuit has repeatedly affirmed, when objective medical evidence in

21

22  [1] The ALJ identifies no medical evidence showing lack of muscle wasting is inconsistent with Plaintiff's
    testimony. In SSR 16-3p, the Commissioner provides, as an example, that a claimant limited to standing
    and walking "no more than a few minutes a day" for the last year "would be expected to have some signs

23  of muscle wasting as a result." SSR 16-3p at *5. Plaintiff did not testify to such extreme limitations, and
    thus a lack of muscle wasting does not undermine her testimony. The other medical evidence the ALJ
    identified, however, supports the ALJ's decision.

the record is inconsistent with the Plaintiff's testimony, the ALJ may weigh it as undercutting such testimony. *See, e.g.*, *Chaudhry v. Astrue*, 688 F.3d 661, 672-73 (9th Cir. 2012) (affirming an ALJ's determination that interpreted and preferred objective medical evidence to subjective testimony); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (affirming an ALJ's discounting of subjective claims of disabling pain based on objective medical evidence and a plaintiff's daily activities); *Thomas*, 278 F.3d at 959 (affirming an ALJ's decision discounting Plaintiff's testimony after "finding no objective medical evidence to support [Plaintiff's] descriptions of her pain and limitations," and "that [plaintiff] was able to perform various household chores such as cooking, laundry, washing dishes, and shopping"); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001) (affirming an ALJ's rejection of allegations of disabling pain based on normal physical examinations).

Notably, Plaintiff does not challenge the ALJ's findings related to inconsistency between the medical record and her testimony in her opening brief. Rather, citing *Huston v. Bowen,* 838 F.2d 1125 (10th Cir. 1988), Plaintiff argues that the ALJ erred by not evaluating her subjective testimony of pain in addition to the objective medical evidence of record. (Dkt. # 29 at 23.) This case is readily distinguishable from *Huston*, however, where the Court found that the ALJ erred by neglecting to make findings regarding the credibility of testimony when the medical evidence did not contradict the nonmedical testimony. *Huston*, 838 F.2d at 1131. Here, as discussed above, the ALJ reasonably found that the medical evidence contradicted Plaintiff's testimony. Plaintiff's conclusory statement that the ALJ erred in evaluating her testimony thus fails to show harmful error in the ALJ's analysis.

In her reply brief, Plaintiff argues the ALJ erred by taking findings "completely out of context" but cites only two examples without explaining how they contradict the ALJ's findings.

(Dkt. # 33 at 5-6.) First, Plaintiff argues the ALJ cited records that showed normal findings but also contained "other relevant findings, such as chronic fatigue, weakness from sitting, difficulty walking, back pain, numbness and healing, stiff and swollen joints, positive straight leg raising test bilaterally, [and] moderate neuro foraminal cervical stenosis confirmed on MRI from 2017, etc." (*Id.*) And second, the findings indicating she "ambulates without difficulty or assistance" were not analogous to her ability to ambulate effectively within the context of substantially gainful activity. (*Id.*) Plaintiff contends the ALJ erred because this is "tantamount to improperly playing doctor." (*Id.* at 7.) But it is the ALJ who is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews*, 53 F.3d at 1039. While the Court is required to examine the record as a whole, the Court must uphold the Commissioner's conclusion when the evidence is susceptible to more than one rational interpretation. *Thomas*, 278 F.3d at 954. Plaintiff's conclusory argument that the evidence could support more restrictive findings and that the ALJ erred by playing doctor thus fails to show harmful error.

Plaintiff then argues that the ALJ erred by relying "heavily" on a third-party report about her activities from a friend who did not have knowledge of her conditions and limitations. (Dkt. # 29 at 23.) The record paints a different picture. In contrast to Plaintiff's assertion, the report was filled out by a friend who indicated that the Plaintiff lives with her in her house, that they spend a lot of time together, and that she has known the Plaintiff for thirteen years. AR at 310. Nor did the ALJ rely "heavily" on the third-party function report. Instead, the ALJ spent several pages detailing which parts of the record contradicted which parts of the testimony before mentioning the report in question. *Id.* at 24-27. In doing so, the ALJ noted only that the record contained statements "provided by others familiar with" the Plaintiff that indicated she "is

capable of more activity than she alleged in that there are no descriptions of significant limitations on concentration or social interaction." *Id*. at 27.

Here, the ALJ considered Plaintiff's testimony and found that the largely normal physical findings throughout the medical record did not support the severity of physical limitations she alleged. While the ALJ could have made it more clear which parts of the record contradicted which parts of Plaintiff's testimony, any error the ALJ may have made is harmless because "the agency's path may reasonably be discerned." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citation and internal quotation marks omitted). That is, the ALJ summarized portions of the medical record that did not reflect the severity of physical limitations Plaintiff opined (AR at 25), highlighted that the third-party report indicated she was more capable than alleged (*id*. at 27), and found that the state agency medical consultant's opinions – specifically that Plaintiff could do a "range of light work with frequent postural activities, except for occasional stooping and unlimited balance, and the need to avoid concentrated exposure to vibration" - were persuasive." *Id*. at 28. Accordingly, substantial evidence supports the ALJ's analysis regarding Plaintiff's physical symptoms.

In discounting Plaintiff's testimony regarding her mental symptoms, the ALJ noted that the record would reflect some observations of distress, discomfort, or other behavior "associated with pain or fatigue during a significant number of medical appointments." AR at 26-27. The ALJ cited records indicating that: (1) she consistently reported that she was not experiencing any fatigue (*id*. at 388, 391, 395, 398, 455); (2) in 2018, when she reported symptoms that included fatigue, it was "in the context of seeking treatment for the flu, which does not reflect her baseline functionality." (*id*. at 403-05); (3) treatment records routinely indicated she was comfortable and/or appeared in no acute distress, with normal mood and affect (*id*. at 406, 412, 417, 421, 426,

431, 462, 523, 528, 660, 677, 702, 727, 834); (4) she was consistently described as alert, without any indication she presented as tired or sleepy (*id*. at 383, 523, 529, 635, 660, 677); and (5) "on a few occasions following the death of her boyfriend, the [Plaintiff] was noted to present in some distress (*id*. at 392, 399)," but the ALJ found this simply highlighted "the regularity with which the [Plaintiff] presented with no outward appearance of distress or discomfort." *Id*. at 26-27.

In her reply brief, Plaintiff argues that "every instance in the medical record" where she was observed in "no acute distress" is "also accompanied by one or more corresponding notations in the same medical records of relevant pain and discomfort findings." (Dkt. # 33 at 3.) Specifically, Plaintiff cites an example from April 2018, where she was observed in "no acute distress." (*Id*.) There, Plaintiff was also noted to have "persistently worsening lower back pain radiating to the right thigh . . . decreased appetite, fatigue, and generalized weakness." However, the ALJ did not find that Plaintiff had no pain or distress, rather, they found that the longitudinal record did not support the severity of the limitations she alleged. Plaintiff further argues that the ALJ erred by relying on observations from providers who did not specialize in observing patients experiencing acute distress, that the record does not reflect physical exam notes or findings that would adequately test her pain levels, and that the findings were "akin to the type of unreliable checkbox form" that are generally seen as unreliable. (*Id*. at 3-4.) That the record does not contain support for Plaintiff's testimony does not, however, establish that the ALJ erred in finding those additional limitations not supported by the record.

As to the intensity or persistence of Plaintiff's symptom testimony, an ALJ may rely on a Plaintiff's non-compliance with treatment to discount her testimony when she cannot offer a good reason for non-compliance with treatment. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see also Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *see also* SSR 16-

3p. Here, the ALJ noted that: (1) although she established mental health treatment in June 2019, she failed to follow through with appointments (AR at 644-51); (2) she was eventually discharged for her lack of follow through after she attended just one session (*id*. at 652); and (3) she has not described reasons that would excuse her minimal engagement with treatment. *Id*. at 27.

Finally, Plaintiff contends that even if she has "at times been able to perform some household chores, cook simple meals, or do personal care, these tasks are not similar to typical work responsibilities." (Dkt. #29 at 25.) Here, Plaintiff argues that "the evidence reflects that Plaintiff was likely not doing [activities] with the consistency and persistence that a work environment requires." (*Id*.) The Court first notes that the ALJ did not dismiss Plaintiff's testimony because it was inconsistent with her activities of daily living, but rather, because it was inconsistent with the medical record. Nonetheless, because Plaintiff admits the evidence shows it was *likely* her activities were not analogous to the rigors of full-time work, it follows that the evidence had more than one rational interpretation. Thus, it is the Commissioner's conclusion that must be upheld. *See Thomas*, 278 F.3d at 954.

In sum, the ALJ's rationales for discounting Plaintiff's testimony were supported by substantial evidence. Therefore, in doing so, the ALJ did not err.

**B.    The ALJ Did Not Err in Evaluating Medical Opinions**

In challenging the ALJ's analysis of her subjective testimony, Plaintiff makes a conclusory one-sentence challenge to the ALJ's assessment of opinions from Drs. Wheeler, Sackett, and VanFossen, arguing that these "opinions are both supported by and consistent with the medical record." (Dkt. # 29 at 27.) However, as the Commissioner asserts (dkt. # 31 at 12-13), to preserve an issue, a party must have "contentions… accompanied by reasons" and "a bare

assertion of an issue does not preserve a claim." *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929-30 (9th Cir. 2003). Plaintiff does not engage with the ALJ's reasoning of these opinions, so the Court need not consider Plaintiff's cursory argument. Nonetheless, the applicable regulations require the ALJ to articulate the persuasiveness of each medical opinion, specifically with respect to whether the opinions are supported and consistent with the record. 20 C.F.R. §§ 416.920c(a)-(c). An ALJ's consistency and supportability findings must be supported by substantial evidence. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The Court finds that the ALJ properly applied these factors when evaluating each of the challenged opinions.

First, the ALJ considered the opinion of Dr. Wheeler (AR at 28), who completed a June 2018 evaluation suggesting several marked and severe limitations, with an overall rating of severe. *Id.* at 374-86. The ALJ found this opinion unsupported because: (1) it did not discuss the evidence that was relied on in determining Plaintiff's severity ratings (*id.* at 28); and (2) the suggestion that Plaintiff's limitations would last ten months or more in duration neither related to the twelve-month durational requirement for Plaintiff's claim (20 C.F.R. § 416.909), nor matched Plaintiff's psychiatric symptom improvement within a year of the death of her boyfriend. *Id.* at 28. The ALJ found the opinion inconsistent with the routine observations that the Plaintiff presented with normal mood and affect and with the lack of cognitive difficulties noted by treatment providers. *Id.* (citing AR at 307, 313, 318, 328, 543, 635, 647, 653.)

Next, the ALJ evaluated Dr. Sackett's opinion. AR at 29. Dr. Sackett evaluated the Plaintiff in December 2018, opining that she is limited in her ability to perform simple and repetitive tasks, has poor ability to manage complex tasks and consistently perform work activities, low ability to maintain attendance, and fair ability to interact with others. *Id.* at 512-17.

1    He also suggested that Plaintiff's conditions were unlikely to improve within twelve months,

2    even with optimal treatment. *Id*. The ALJ found this opinion unpersuasive because it was not

3    supported and only included "conclusory references to the cognitive exam and personal

4    interactions, or the [Plaintiff's] subjective reports of her activities of daily living." *Id*. at 29.

5    Similar to the ALJ's disposal of Dr. Wheeler's opinion, the ALJ found this opinion inconsistent

6    with the observations of normal mood and affect, or mixed presentation, and the lack of

7    cognitive difficulties indicated by treatment providers.

8         Last, the ALJ evaluated Dr. VanFossen's opinion, which was based largely on Dr.

9    Wheeler's opinion. AR at 29, 1025. Thus, the reasons the ALJ provided for rejecting Dr.

10   Wheeler's opinion apply to this opinion as well. In addition to those reasons, the ALJ found the

11   opinion unpersuasive because there was "no support or basis for the suggestions the [Plaintiff]

12   has significant impairments on one or more basic work activities. [And the] report does not

13   describe any specific limitations and suggests a duration of only six months." *Id*.

14        Plaintiff's conclusory reference to error fails to establish a meaningful challenge to the

15   ALJ's analysis. The Court thus finds that the ALJ properly found these opinions unpersuasive

16   because they were neither consistent with the record, nor supported by explanation.

17   **C.      The ALJ Did Not Err in Assessing the RFC or Subsequent Step Five Analysis**

18        The ALJ found the Plaintiff capable of light work with additional limitations. AR at 23-

19   24. In making this finding, the ALJ considered all evidence that was properly credited. Plaintiff

20   broadly argues that the ALJ erred by not providing a "function-by-function" analysis of her

21   limitations. (Dkt. # 29 at 8-22.) To this point, Plaintiff spends fifteen pages in their brief

22   summarizing various parts of the record, largely absent citation, but then fails to explicitly tie the

23   findings to an alleged error in the ALJ's decision. (*Id*.) Plaintiff's generic conclusions alone do

1    not elevate her simple summary of evidence to a sufficiently meaningful argument that this Court

2    is able to address. The Ninth Circuit has itself recognized that the Plaintiff waived "any argument

3    based on [clinical] findings" where the Plaintiff "simply list[ed] numerous clinical findings

4    unaccompanied by argument." *Putz v. Kijakazi*, 2022 WL 6943095, at *2 (9th Cir. Oct. 12,

5    2022). That is because "[b]are assertions and lists of facts unaccompanied by analysis and

6    completely devoid of caselaw fall far short of the requirement that counsel present 'appellant's

7    contentions and the reasons for them.'" *Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th Cir. 2007).

8            While the Court declines to manufacture Plaintiff's argument for her, it nevertheless

9    notes that the ALJ's discounting of medical opinions and subjective testimony was sufficiently

10   specific and legitimate and supported by substantial evidence, as discussed above. Furthermore,

11   as the Commissioner contends (dkt. # 31 at 15-16), the ALJ is not required to prepare a

12   "function-by-function analysis for medical conditions or impairments that the ALJ found neither

13   credible nor supported by the record." *Bayliss*, 427 F.3d at 1217.

14           Plaintiff further argues that the ALJ erred by engaging in "improper cherry picking of the

15   record." (Dkt. # 29 at 10.) In making this argument, Plaintiff does not cite any specific examples

16   illustrating her point. Plaintiff generally contends that the ALJ's reliance on records related to

17   her cervical and lumbar spine impairments that showed she presented with normal mood and

18   affect was cherry picking because "such providers would not be particularly noting or focusing

19   on psychiatric or mental health concerns." (*Id.*) This speculative explanation fails to show that

20   the ALJ's analysis was harmful error, and the ALJ did not rely solely on these records. The only

21   other example Plaintiff provides is that "the ALJ heavily referenced statements in the third party

22   function report" (*id.*), and as explained above, the ALJ did not overly rely on lay witness

23   testimony.

1     Next, Plaintiff broadly contends that the ALJ erred by "improperly playing doctor" and

2     that "it is well-settled law that an ALJ may not render his or her own medical opinion and is not

3     empowered to independently assess clinical findings." (Dkt. # 29 at 13, 21 (citations omitted).)

4     Without analysis, Plaintiff argues that "the ALJ discounted multiple valid medical opinions that

5     were both consistent with and supported by the medical evidence." (*Id.* at 13.) But, as explained

6     above, the ALJ did not err in evaluating the challenged medical opinions, it is the Commissioner

7     who is responsible for "translating and incorporating clinical findings into a succinct

8     RFC." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing *Stubbs-*

9     *Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)). Plaintiff's assertion that the ALJ's

10    evaluation and comments about the record were "improper and inaccurate" and "tantamount

11    once more to improperly playing doctor," fails to show error by the ALJ. (Dkt. # 29 at 21.)

12    Plaintiff argues that the ALJ erred by failing to account for her moderate difficulties in

13    concentration, persistence, or pace in the RFC assessment. (Dkt. # 29 at 18-19.) Plaintiff

14    contends that "several courts and circuits have previously determined that" it is error for the ALJ

15    to find moderate limitations in concentration, persistence, and pace domains of functioning

16    without including a corresponding limitation regarding time off task in the RFC. (*Id.*) Despite the

17    assertion that several courts and circuits have decided this issue, the only case she cites to is

18    *Kelly M. v. Comm'r*, 2018 WL 5786116, at *7 (D. Md. Nov 5, 2018), a District of Maryland case

19    where the Court found that the ALJ did not err in limiting Plaintiff's positions to those "not at a

20    production rate pace," and that similar language generally suffices to address a Plaintiff's issues

21    with staying on task. However, the Ninth Circuit has itself held that "an ALJ's assessment of a

22    [Plaintiff] adequately captures restrictions related to concentration, persistence, or pace where

23    the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-*

1    *Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (concluding that RFC of "simple tasks"

2    accounted for Plaintiff's difficulties in concentration, persistence, or pace). Here, the ALJ found

3    Plaintiff had moderate limitations for purposes of step three (AR at 22), stated the RFC reflected

4    those limitations (*id*. at 23), and assessed that Plaintiff "may have intermittent disruptions in

5    attention and concentration, but not sufficient enough to preclude productive activity in a

6    competitive employment situation." *Id*. at 24. The ALJ thus incorporated limitations designed to

7    address Plaintiff's issues with concentration, persistence, or pace.

8         Here, based on Vocational Expert ("VE") testimony, the ALJ found that the Plaintiff

9    could do Reasoning Level 2 occupations. AR at 30, 65-66; *see also* DOT 222.687-014, 1991 WL

10   672131 (garment sorter); *see also* DOT 706.684-022, 1991 WL 679050 (basic assembler).

11   Plaintiff argues that the RFC limiting her to simple, routine tasks means she cannot perform

12   occupations containing a Reasoning Level 2. (Dkt. # 29 at 28.) However, as the Commissioner

13   highlights (dkt. # 31 at 17), the Ninth Circuit has repeatedly rejected this argument. *See Davis v.*

14   *Saul*, 846 F. App'x 464, 466 (9th Cir. 2021) (unpublished) ("Simple work is consistent with

15   positions requiring Reasoning Level 2."); *see also Ranstrom v. Colvin*, 622 F. App'x 687, 688

16   (9th Cir. 2015) (unpublished) ("There is no appreciable difference between the ability to make

17   simple decisions based on 'short, simple instructions,' and . . . what Reasoning Level 2

18   requires."); *see also Abrew v. Astrue*, 303 F. App'x 567, 569 (9th Cir. 2008) (unpublished)

19   ("there was no conflict between the ALJ's step five determination that [the Plaintiff] could

20   complete only simple tasks and the vocational expert's testimony that [the Plaintiff] could do

21   jobs that the U.S. Department of Labor categorizes at 'Reasoning Level 2'"). While Plaintiff

22   contends the ALJ should have relied on Reasoning Level 1 jobs (dkt. # 29 at 28), as the

23   Commissioner notes (dkt. # 31 at 17), the ALJ did cite at least one occupation with a Reasoning

1 | Level 1 – basket filler, consisting of 100,000 jobs in the economy. AR at 30; *see also* DOT

2 | 529.689-010, 1991 WL 674737.

3 | Next, Plaintiff argues that she could not perform any of these occupations because she

4 | was limited to superficial contact with coworkers at work. (Dkt. # 29 at 29.) However, the ALJ

5 | relied on VE testimony for this point (AR at 30, 65-66), and Plaintiff does not challenge this

6 | testimony. "[G]iven its inherent reliability, a qualified vocational expert's testimony as to the

7 | number of jobs existing in the national economy that a claimant can perform is ordinarily

8 | sufficient by itself to support an ALJ's step-five finding." *Ford v. Saul*, 950 F.3d 1141, 1160 (9th

9 | Cir. 2020); *see also, e.g.*, *Bayliss*, 427 F.3d at 1218 ("the ALJ's reliance on the VE's testimony

10 | regarding the number of relevant jobs in the national economy was warranted").

11 | Although Plaintiff seems to argue that the ALJ's VE hypothetical did not match the RFC

12 | assessment in the written decision (dkt. # 29 at 28-29.), the Court finds no such discrepancy.

13 | *Compare* AR at 23-24 (the ALJ's RFC assessment) *with id.* at 65-66 (the ALJ's VE

14 | hypothetical). That the ALJ included additional limitations in alternative hypotheticals posed to

15 | the VE (*id.* at 68-70) does not establish that the ALJ erred in omitting them from her written

16 | RFC assessment because the ALJ did not find those additional limitations to be supported by the

17 | record. Because the ALJ's RFC assessment is consistent with the VE hypothetical relied upon by

18 | the ALJ at step five, Plaintiff has failed to show that the ALJ erred in either assessing her RFC or

19 | in entering step-five findings. *See Leach v. Kijakazi*, 70 F.4th 1251, 1255 (9th Cir. 2023)

20 | (explaining that an ALJ must accurately describe a claimant's limitations when posing a VE

21 | hypothetical in order for the VE's testimony in response to constitute substantial evidence in

22 | support of the ALJ's step-five finding).

23 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

### V.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 23rd day of January, 2024.

_____
MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 16